# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Martin C. Ashman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 4935 | **DATE** | 4/23/2002 |
| **CASE TITLE** | Pasquale Menolascina vs. Jo Anne B. Barnhart | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter memorandum opinion and order. Plaintiff Pasquale Menolascina's motion for summary judgment [6-1] and motion for remand are denied. Defendant Jo Anne B. Barnhart's motion for summary judgment [7-1] is granted. The Commissioner's final decision is affirmed.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | |
| ✓ | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | |
| | Docketing to mail notices. | |
| ✓ | Mail AO 450 form. | |
| | Copy to judge/magistrate judge. | |

| | courtroom deputy's initials | |
|---|---|---|
| IS | | |

2
number of notices

APR 2 4 2002
date docketed

docketing deputy initials

4/23/2002
date mailed notice

IS
mailing deputy initials

**Document Number**

10

U.S. DISTRICT COURT

02 APR 23 PM 4: 32

Date/time received in central Clerk's Office

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **PASQUALE MENOLASCINA,** | ) | |
| | ) | **DOCKETED** |
| Plaintiff, | ) | Case No. 01 C 4935  APR 2 4 2002 |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | Martin C. Ashman |
| **JO ANNE B. BARNHART,** | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Pasquale Menolascina seeks judicial review of the Commissioner's final decision denying Menolascina's application for Disability Insurance Benefits ("DIB"). Menolascina contends that the Commissioner's decision should be set aside because substantial evidence does not support the Administrative Law Judge's (the "ALJ") finding that Menolascina could return to work as a machine tender, and because the ALJ failed to address evidence favorable to Menolascina. Menolascina further argues that this case should be remanded to the ALJ for consideration of additional evidence pursuant to 42 U.S.C. § 405(g). For the following reasons, this Court denies Menolascina's Motion for Summary Judgment and Menolascina's Motion for Remand. The final decision of the Commissioner is affirmed.[1]

---

[1] The parties have consented to have this Court conduct any and all proceedings, including the entry of final judgment. *See* 28 U.S.C. § 636(c); Local R. 73.1(b).



## I.    Procedural Background

Menolascina filed an application for DIB on January 12, 1999, alleging that he became disabled on March 24, 1993, due to a back injury. (R. at 78, 98.) The Social Security Administration denied Menolascina's application initially and upon reconsideration. (R. at 52-53.) On April 29, 1999, Menolascina requested a hearing before the ALJ to challenge the denial. (R. at 63.)

The hearing before the ALJ took place on August 11, 1999, at which the ALJ elicited testimony from Menolascina, through an interpreter, and Frank Mendrick, a vocational expert. (R. at 19.) Menolascina was represented by counsel at the hearing. After considering the testimony and the medical evidence, the ALJ concluded that Menolascina was not disabled. (R. at 17-18.)

On September 30, 1999, Menolascina appealed the ALJ's decision to the Appeals Council. (R. at 9.) The Appeals Council declined to review the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner. Menolascina now seeks judicial review of that decision pursuant to 42 U.S.C. § 405(g).

## II.    Factual Background

### A.    Menolascina's Testimony

Menolascina was born in Italy on December 27, 1952, making him forty-six at the time of the hearing. (R. at 24.) He attended school in Italy through the fifth grade. (R. at 26.) Although he emigrated to the United States in 1977, he could not read, write, or understand English. (R. at 26-27.)

From 1977 to 1982, Menolascina worked at Brachs Candy as a batch maker. His work duties included lifting and carrying containers of ingredients to make candies, pouring the ingredients inside of the containers into other containers, placing candies into boxes, and lifting and carrying boxes of candies, which weighed approximately fifty pounds. (R. at 33-34.) After that, Menolascina worked at a meat market performing a range of tasks. He sliced meat, made deliveries, loaded and unloaded trucks, and so on. (R. at 32.) Ordinarily, Menolascina worked seventy hours per week. Occasionally, Menolascina lifted boxes weighing seventy pounds each. (R. at 32.)

From 1987 to 1991, Menolascina worked at Marble Supplies International as a laborer, loading and unloading trucks containing boxes weighing around fifty pounds. (R. at 30-31.) In 1992, Menolascina accepted employment at a factory as a forklift operator and grinder and polisher of metal castings for car parts. (R. at 27.) As a forklift operator, Menolascina pushed and pulled levers and used foot controls. (R. at 28.) The grinder and polisher position required Menolascina to lift around thirty-five pounds and sit or stand for periods of time depending on the work. (R. at 28.) Menolascina's last day of work at the factory was on March 24, 1993, due to a back injury that he sustained while grinding and polishing castings on the job. (R. at 25-26.)

Since March 1993, Menolascina has experienced lower back pain that he believes precludes him from working. (R. at 29.) He experienced lower back pain while supine, rising from bed, standing, sitting, bending, and ambulating. (R. at 29, 30, 36-40.) Menolascina's lower back pain bothered him every day all day long, but the amount of pain varied. For example, when it was cold outside Menolascina's lower back pain would become worse. (R. at 36.) At least once or twice per week, even more frequently when it was cold, Menolascina testified that

his lower back pain was so bad that he could not do anything. (R. at 37-38.) But on "good days,"
Menolascina was able to go walking for up to five blocks, drive a car, and visit with friends at the
Italian club for around an hour and a half at a time. (R. at 42-43.) He could stand or sit for about
twenty minutes without changing position. (R. at 45.) At the hearing Menolascina stated that he
never did household chores due to his lower back pain, although on his daily activity
questionnaire Menolascina stated that he did not do household chores prior to his back injury
because his wife did them. (R. at 39-40, 117.)

To alleviate his lower back pain, Menolascina took Tylenol or Motrin at least one time
per day, sometimes three to four times per day. (R. at 40, 43-44.) Menolascina stopped taking
prescription medicine because it caused him stomach problems. (R. at 40.) On occasion,
Menolascina's daughter would massage Menolascina's lower back to abate the pain. (R. at 37.)

### B.    Medical Evidence

The medical evidence begins with Dr. Mark Lorenz's progress notes dated May 19, 1993.
Dr. Lorenz noted that Menolascina had injured his back at work in March 1993, that Menolascina
received treatment since that date from other physicians, that Menolascina was told to return to
work by one of those physicians, but that Menolascina was still experiencing lower back and leg
pain. (R. at 195.) At the time, Menolascina had significant restriction of bending and extending
at the waist. An x-ray revealed severe degenerative disc disease at L5-S1 and other problems.
(R. at 195.) Dr. Lorenz recommended that Menolascina remain off work and opined that
Menolascina was a good candidate for fusion, especially considering that other treatment was
ineffective. (R. at 195.) Dr. Boone Brackett also examined Menolascina in 1993. Menolascina

complained of lower back and leg pain. Dr. Brackett observed limited range of motion of Menolascina's back and left leg. (R. at 141-43.) An MRI showed disc narrowing at L5-S1. (R. at 142.)

In April 1994, Dr. Brackett released Menolascina to return to work despite the fact that he was still experiencing lower back pain. Dr. Brackett indicated that Menolascina's range of motion was good and that he did not have any residual problems. (R. at 135.)

A May 1994 MRI showed desiccation of the L5-S1 disc and narrowing of the disk space. No evidence of disc herniation or spinal stenosis was identified. (R. at 144.) Notes from Dr. Lorenz dated from May 1994 to August 1994 revealed that Menolascina continued to experience significant lower back pain. (R. at 194.)

On October 10, 1994, Menolascina was admitted to Hinsdale Hospital to undergo L5-S1 fusion. (R. at 149.) He was discharged five days later with instructions to take Tylox for pain. (R. at 149.) Months later, Menolascina remarked that he no longer experienced any lower back or leg pain. (R. at 193.) Dr. Lorenz felt that the fusion was a success and he placed Menolascina in physical therapy. (R. at 193, 210-13.)

On March 9, 1995, Dr. Robert Eilers conducted an examination of Menolascina. At the exam, Menolascina complained of lower back pain at night while changing positions and after walking two or three blocks. (R. at 178.) Dr. Eilers noted that Menolascina's daily activities were not significantly limited and that he last worked on March 24, 1993. (R. at 179.) Menolascina had an essentially full range of motion except for the lumber spine, which was limited to about forty degrees of forward flexion. (R. at 179.) Menolascina showed significant myofascial tenderness over the lumbosacral paraspinals as well as over the thoracic paraspinals

and piriformis muscle. Straight leg raising was found to be negative. (R. at 179.) Menolascina's gait showed a forward flexed pattern with forward flexion of the lumbar spine. (R. at 179.) Dr. Eilers's impression was myofascial pain syndrome secondary to L5-S1 fusion. He recommended that Menolascina begin physical therapy, take Elavil for pain, and remain off work. Dr. Eilers opined that Menolascina could attain a sedentary work position, but no more than that. (R. at 179.)

Dr. Eilers examined Menolascina again on March 23, 1995. He indicated that Menolascina was "a good candidate for probably work hardening in order to be able to return to sedentary, light, and *possibly* some medium work levels." (R. at 177.) Menolascina was showing progress with sitting and standing and his extent of pain was diminished. (R. at 177.) Dr. Eilers recommended that Menolascina continue with physical therapy. He opined that Menolascina should not return to the forklift operator position due to the frequent bouncing and jarring associated with the work. (R. at 177.)

On April 7, 1995, Dr. Norman Aliga examined Menolascina. Dr. Aliga observed that Menolascina had tenderness on moderate pressure to his lower back and minimal movement of the lumbar spine. (R. at 230.) Dr. Aliga diagnosed Menolascina with back pain, weakness, poor endurance, and tightness secondary to L5-S1 fusion. (R. at 230.) He recommended that Menolascina continue with physical therapy, and he opined that Menolascina could return to work as a forklift operator despite the bouncing and jarring associated with the work. (R. at 231.)

On April 25, 1995, Dr. Eilers noted that Menolascina was doing reasonably well and that the goal was to advance Menolascina to a medium work parameter. (R. at 176.) On May 8,

1995, Wendy Diwik completed a Phase I Work Hardening Evaluation. Menolascina complained of lower back pain and sacrum pressure, which he rated as an eight out of ten. (R. at 221.) Also, Menolascina commented that he did not exercise at home prior to the exam because of increased pain due to the weather. (R. at 221.) Diwik placed Menolascina on work hardening for two to four weeks and opined that it was fair for Menolascina to return to work as a laborer secondary to perceived pain. (R. at 222.) On May 30, 1995, Dr. Eilers noted that Menolascina might be limited to performing sedentary work in light of Menolascina's constant complaints of lower back pain. (R. at 174.)

Diwik prepared a Functional Capacity Assessment Summary Letter in June 1995. She found that Menolascina's trunk mobility had improved, but that he still was limited by lower back pain. (R. at 223.) Menolascina also claimed to experience paresthesias of the left lower extremity when standing greater than twenty minutes. Overall, Diwik opined that Menolascina's endurance in terms of sitting, standing, walking, carrying, and lifting was adequate to complete an eight-hour workday. Quality of motion was generally smooth. (R. at 224-25.) Diwik recommended that Menolascina return to work at the light exertional level defined as lifting twenty pounds infrequently, ten pounds frequently, walking and carrying at 2.5 mph with no grade or at a slower speed with ten pounds or less, but felt that Menolascina could not return to his past work as a laborer. (R. at 226.) On the last page of her letter, Diwik noted that Menolascina reported driving his vehicle for forty-five minutes at a time. (R. at 228.)

On June 29, 1995, Dr. Eilers released Menolascina to light work as per Diwik's recommendation. (R. at 172.) Approximately two months later, Dr. Eilers noted that Menolascina was unable to find work within his functional limitations and that Menolascina

experienced increased lower back pain with the change in the weather, which Dr. Eilers felt was expected. (R. at 170.)

On December 7, 1995, Dr. Eilers averred that Menolascina probably would not be able to perform his past work, but again Dr. Eilers recommended that Menolascina return to work in a light duty position. (R. at 168.) This same recommendation was made by Dr. Eilers on January 23, 1996, April 23, 1996, June 11, 1996, September 3, 1996, December 17, 1996, and May 27, 1997. On each occasion, Dr. Eilers noted that Menolascina complained of lower back pain. Dr. Eilers expected that Menolascina would always experience exacerbations and remissions of lower back pain, and he explained that Menolascina would have to learn to modify his lifestyle and tolerate the pain. (R. at 162-64.) Dr. Lorenz concurred. (R. at 192.)

In October 1998, Menolascina was involved in a vehicular accident and taken to Gottlieb Memorial Hospital via ambulance. A physician diagnosed Menolascina with lumbar strain. An x-ray was unremarkable other than that it revealed marked disc space narrowing at L5-S1. (R. at 181, 190.) Less than one month later, Dr. Lorenz examined Menolascina and had him x-rayed. Dr. Lorenz concluded that Menolascina's fusion was solid with very little degenerative change and no abnormalities. Neurologically, Menolascina was intact. (R. at 192.)

Dr. Patey recommended that Menolascina return to light work on March 4, 1999, based on medical records and x-rays from Gottlieb Memorial Hospital. (R. at 196.) Dr. José González completed a Physical Residual Functional Capacity Assessment on March 11, 1999, without the benefit of reviewing any treating or examining source statements regarding Menolascina's physical capacities. (R. at 203.) Dr. González diagnosed Menolascina with back pain. He opined that Menolascina could occasionally lift and carry twenty pounds, frequently lift and carry

ten pounds, stand or walk for about six hours in an eight-hour workday, sit for about six hours in an eight-hour workday, and push or pull without limitation. (R. at 198.) Due to Menolascina's history of back pain and limited range of motion of the lumbar spine, Dr. González believed that Menolascina could climb, stoop, kneel, crouch, and crawl only occasionally. (R. at 199.)

### C. The Vocational Expert's Testimony

Mendrick testified last at the hearing. Mendrick classified Menolascina's grinder and polisher position as medium and unskilled, his forklift operator position as medium and semiskilled, his laborer position as heavy and unskilled, his meat market position as light and unskilled, his delivery truck driver position as medium and semiskilled, and his batch maker position as medium to heavy and unskilled. (R. at 47-48.) When asked to name positions available to an individual aged forty to forty-eight years with five years of education, no ability to communicate in English, work experience as described above, the ability to lift twenty pounds infrequently and ten pounds frequently, and the ability to walk or carry at 2.5 mph no grade or at a slower speed with ten pounds or less, Mendrick answered, "Machine tender." (R. at 48-49.) If the individual had to change positions every hour and perform only incidental walking with only occasional bending, and no work in extremes of temperatures, then approximately 3800 machine tender positions would be available. (R. at 49-50.) But if the individual had to change positions every twenty minutes, then no machine tender position would be available. (R. at 50.) Upon further questioning, Mendrick explained that a machine tender position would permit the individual five days off per year for personal or sick leave. (R. at 50.)

### III.    The ALJ's Decision

In light of the testimony and evidence narrated above, the ALJ found that Menolascina was not disabled. The ALJ determined that Menolascina was not engaged in substantial gainful activity since March 24, 1993. Menolascina had a severe impairment of osteoarthritis in the lumbar spine, but Menolascina's impairment did not meet or equal in severity any of the listings. Although Menolascina could not perform his past relevant work, the ALJ concluded that Menolascina was able to perform a limited range of light work, thereby making him not disabled. (R. at 17-18.)

To arrive at this final conclusion, the ALJ discounted Menolascina's complaints of lower back pain. Particularly, the ALJ pointed out that Menolascina's lower back pain "has never been particularly significant according to the various treating physicians," that Menolascina took nonprescription medicine to relieve his lower back pain, that Menolascina regularly visited with friends and family, that the objective evidence did not provide strong support for Menolascina's complaints of disabling pain, and that no physician has ever found Menolascina to be disabled. (R. at 14-15.) The ALJ also relied on evidence showing that Menolascina could sit, stand, or walk for sixty minutes, lift twenty pounds occasionally, carry ten pounds, bend occasionally, but not work in extreme cold. (R. at 13-14.) The ALJ determined that Menolascina could perform a significant number of jobs in the national economy using the Medical-Vocational Guidelines as a framework supplemented by the testimony of Mendrick. (R. at 16.)

## IV. Discussion

### A. The ALJ's Step-Five Analysis

Menolascina's principal argument on appeal is that the ALJ's finding that Menolascina could perform a limited range of light work, thereby making him not disabled, is not supported by substantial evidence. Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a mere scintilla of the evidence, but less than the greater weight of the evidence. *Id.*; *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). In determining whether substantial evidence exists, the court cannot reevaluate the facts, reweigh the evidence, or substitute its own judgment for that of the ALJ. *Jones v. Shalala*, 10 F.3d 522, 523 (7th Cir. 1993).

After careful review, we find that substantial evidence supports the ALJ's finding that Menolascina could perform work as a machine tender, thereby making him not disabled. The objective medical evidence evinces a history of significant back problems associated with degenerative disease, yet the evidence is such that a reasonable person could find Menolascina capable of performing a limited range of light work. Particularly, the opinions of Drs. Eilers and Lorenz, Menolascina's treating physicians, from 1995 to 1998 provide strong support for Menolascina's ability to perform a limited range of light work. Both physicians acknowledged steady progress in Menolascina's condition, with an occasional aberration in 1995, and, post-1995, they invariably recommended that Menolascina return to light work after each evaluation, even after Menolascina sustained minor injuries in the 1998 vehicular accident.

Additional support for Menolascina's ability to perform a limited range of light work comes from Dr. Aliga, who opined that Menolascina could return to his prior position as a forklift operator. It especially comes from Diwik's Functional Capacity Assessment, which was based on tests completed by Menolascina over a two-day period. Diwik noticed improvement in Menolascina's trunk mobility and determined that Menolascina's endurance in terms of sitting, standing, walking, carrying, and lifting was adequate to complete an eight-hour workday. Diwik opined that Menolascina could lift twenty pounds infrequently, ten pounds frequently, walk and carry at 2.5 mph with no grade or at a slower speed with ten pounds or less. This opinion was fully adopted by Drs. Eilers and Lorenz and the ALJ.

Dr. Patey's 1999 recommendation provides further support for Menolascina's ability to perform a limited range of light work. Lastly, Dr. González's Physical Residual Functional Capacity Assessment provides the same. Dr. González determined that Menolascina could occasionally lift and carry twenty pounds, frequently lift and carry ten pounds, stand or walk for about six hours in an eight-hour workday, sit for about six hours in an eight-hour workday, push or pull without limitation, and climb, stoop, kneel, and crawl occasionally. Stating the obvious, as a whole, the objective evidence greatly favors the ALJ's finding that Menolascina could perform a limited range of light work. There is practically nothing in the way of objective evidence to counter the ALJ's finding.

Menolascina claimed that he experienced exacerbations of pain that precluded him from performing any type of work, but the ALJ concluded that Menolascina's statements of pain were exaggerated and hence not fully credible. A credibility finding will not be disturbed unless it is patently wrong. *Luna v. Shalala*, 22 F.3d 687, 690-91 (7th Cir. 1994); *Pope v. Shalala*, 998 F.2d

473, 487 (7th Cir. 1993) (quoting *Imani v. Heckler*, 797 F.2d 508, 512 (7th Cir. 1986)). A credibility finding often involves intangible or inarticulable elements that cannot be discerned from the transcript. *Edwards v. Sullivan*, 985 F.2d 334, 338 (7th Cir. 1993) (quoting *Kelley v. Sullivan*, 890 F.2d 961, 964 (7th Cir. 1989)). To the extent that a credibility finding rests on objective factors or fundamental implausibilities, however, the court has greater freedom to engage in review. *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994).

In making a credibility finding, the administrative law judge must provide specific reasons for the weight given to the claimant's statements, supported by evidence in the record. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) (quoting SSR 96-7p). Factors that the administrative law judge must consider include the objective medical evidence, the claimant's daily activities, the location, duration, frequency, and intensity of the claimant's symptoms, conditions that precipitate and aggravate the claimant's symptoms, medication taken or treatment received to alleviate the claimant's symptoms, and the functional limitations caused by the claimant's symptoms. *Zurawski*, 245 F.3d at 887-88 (quoting *Luna*, 22 F.3d at 691). Statements of pain cannot be discredited simply because objective medical evidence does not substantiate the extent of pain alleged. *Pope*, 998 F.2d at 486. A claimant may be more limited by his impairments than that which the objective medical evidence shows. However, the administrative law judge is not required to give full credit to every statement of pain, or to find that the claimant is disabled simply because the claimant states that he feels unable to work. *Sedrak v. Callahan*, 987 F. Supp. 1063, 1068 (N.D. Ill. 1997); *Baber v. Sullivan*, 756 F. Supp. 396, 399-400 (N.D. Ind. 1991).

Here, the ALJ acknowledged that Menolascina would always experience exacerbations of lower back pain that could not be completely alleviated with medication or surgery. She also found that Menolascina's lower back pain affected his ability to work. This reality was well documented throughout the record. In light of Menolascina's daily activities such as regularly visiting with friends and family, Menolascina's use of Motrin or Tylenol rather than prescription medication for pain, and the objective medical evidence in the record, however, the ALJ did not credit Menolascina's statements that he suffered from disabling lower back pain.

Contrary to Menolascina's assertions, we find that all three reasons are appropriate and adequately explained by the ALJ to support his credibility finding. Menolascina drove his car at least two times per week to the Italian Club to visit with friends, read newspapers, or watch soccer games. He also regularly visited with family, went shopping, ran errands, and watched children. Occasionally, he would walk for five blocks for exercise or go out to eat. Although Menolascina testified at the hearing that he did not do any household chores due to back pain, he indicated on his daily living questionnaire that he did not do any household chores prior to sustaining his back injury because his wife did them. (R. at 117.) Considering these activities as a whole, and under the circumstances of this case, we believe that this evidence provides some support for the ALJ's credibility finding. *See Luna*, 22 F.3d at 691; *Pope*, 998 F.2d at 487; *Baber*, 756 F. Supp. at 399-400; *cf. Zurawski*, 245 F.3d at 887-88; *Clifford v. Apfel*, 227 F.3d 863, 871-72 (7th Cir. 2000).

We also believe that Menolascina's reliance on Motrin or Tylenol to alleviate his pain provides support for the ALJ's credibility finding. The use of less potent analgesics such as Tylenol and Motrin suggests that Menolascina did not suffer from disabling lower back pain.

*Barnett v. Apfel,* 231 F.3d 687, 690 (10th Cir. 2000); *Luna,* 22 F.3d at 691. While Menolascina

claimed that he did not take certain prescription medicine because it upset his stomach, this has

no effect on the inquiry of whether Menolascina's lower back pain rendered him unable to work.

*See DeFrancesco v. Bowen,* 867 F.2d 1040, 1043 (7th Cir. 1989) ("If the claimant has

inexcusably refused to follow prescribed medical treatment that would eliminate his total

disability, then he isn't totally disabled."). We recognize that Dr. Eilers stated that no medicine

would completely alleviate Menolascina's lower back pain, but this does not necessarily mean

that no medicine, prescription or otherwise, would lessen Menolascina's pain. Indeed, in

April 1995 Menolascina was better able to manage his lower back pain with Elavil. (R. at 176.)

On Menolascina's 1999 pain questionnaire, he indicated that when he took Motrin his lower back

pain went away, even though at the hearing he testified that Motrin did not relieve his lower back

pain. (R. at 36-37, 115.)

     Finally, we agree with the Commissioner that the medical evidence overwhelming

supports the ALJ's credibility finding. Drs. Eilers and Lorenz, both of whom were familiar with

Menolascina's lower back pain, recommended that Menolascina return to light or sedentary work.

They both acknowledged Menolascina's pain, but felt that it was expected or within normal

limits, surely not of a disabling nature. (R. at 162-64, 192.) In her Functional Capacity

Assessment Summary Letter, Diwik recommended the same. Diwik made this assessment after

observing Menolascina perform a variety of tasks over a period of two days. The only pain

behavior observed by Diwik was Menolascina's flexing of his left knee after squatting and

Menolascina's complaining of paresthesia and shifting of weight during standing and one time

during sitting and kneeling. (R. at 224.) All of the other physicians in the record recommended

that Menolascina return to light work despite his lower back pain, too. (*See* R. at 15 ("[T]he record does not contain any opinions from treating or examining physicians indicating that the claimant has limitations greater than those determined in this decision.").)

In light of the foregoing, the ALJ properly dismissed Menolascina's claim of excessive absenteeism. As the ALJ did not fully credit Menolascina's complaints of pain, the ALJ was not required to accept Menolascina's testimony that at least two days per week he could not do anything. *See Barnett*, 231 F.3d at 690. The only evidence of possible absenteeism was from Menolascina himself. However, as the ALJ pointed out, all of the other evidence belies this claim. We note that Diwik commented on Menolascina's excellent attendance at work hardening. (R. at 224.) Apparently, Menolascina had no problem maintaining his daily and weekly exercise regimens. (R. at 160-77.)

In sum, the ALJ's credibility finding was neither patently wrong as per the generous standard of review confirmed in *Herron* nor was it inadequately explained as per the requirements contained in SSR 96-7p. Though not an exemplar, the ALJ's credibility finding met the mark. Menolascina raises no challenge as to the ALJ's reliance on Rule 202.16 of the Medical-Vocational Guidelines coupled with Mendrick's testimony. For the sake of completeness, we hold that this reliance was proper, and therefore, we affirm this aspect of the ALJ's step-five analysis as well. *See Cass v. Shalala*, 8 F.3d 552, 556 (7th Cir. 1993) (finding that the hypothetical question need only incorporate limitations that are established by the evidence); *Ortiz v. Chater*, 986 F. Supp. 479, 490 (N.D. Ill. 1997) (finding that the existence of 2000 jobs constituted a significant number of jobs).

## B.    The ALJ's Failure to Address Evidence

Menolascina next argues that the ALJ committed legal error by failing to explain her reason for rejecting Dr. Eilers's opinion that Menolascina experienced "pain exacerbations and variable daily performance." (Pl.'s Mem. Supp. Mot. Summ. J. at 10.) A court reviews the administrative law judge's application of law without deference and without regard to the volume of medical evidence that supports the administrative law judge's findings. *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999). If the administrative law judge's application of law is not properly grounded, then remand or reversal is warranted. *Cook v. Massanari*, No. 00 C 4157, 2001 WL 755145, at *7 (N.D. Ill. July 2, 2001); *Gavin v. Heckler*, 620 F. Supp. 999, 1000 (N.D. Ill. 1985).

The administrative law judge has a duty to articulate reasons for accepting or rejecting entire lines of evidence. *Herron*, 19 F.3d at 333; *Zblewski v. Schweiker*, 732 F.2d 75, 78-79 (7th Cir. 1984). A written evaluation of every piece of the evidence is not required. *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). Yet an administrative law judge may not select and discuss only the evidence that supports her conclusions. *Herron*, 19 F.3d at 333.

This argument addresses points that were already discussed above. Briefly, we iterate that the ALJ did not ignore or reject Dr. Eilers's opinion that Menolascina experienced pain exacerbations and variable daily performance. The ALJ accepted Dr. Eilers's opinion—as well as Drs. Lorenz's, Aliga's, Patey's, and González's opinions—relating to Menolascina's lower back pain. It was Menolascina's testimony that the ALJ rejected, to a degree. A reading of pages thirteen through fifteen of the record evinces this, and the reasons given are adequately explained therein.

Admittedly, the ALJ's decision contains very few citations to the record and oftentimes the ALJ speaks in conclusory language that in the ordinary case, standing alone, would likely be inadequate for purposes of conducting meaningful review. But the medical evidence in this case points in one direction. And very little effort is needed to connect the ALJ's conclusions with her corresponding explanations. Menolascina bombastically states, "Anyone reviewing this decision would be at a loss to determine upon what specific evidence [the ALJ] based her conclusions." (Pl.'s Reply Mem. at 2.) Certainly if this were the case, a remand would be in order. Because it is not, we dismiss Menolascina's argument that the ALJ committed legal error.

## C.    Motion for Remand

Lastly, Menolascina asks this Court to remand the case to the ALJ for consideration of additional evidence pursuant to 42 U.S.C. § 405(g). To obtain a remand pursuant to 42 U.S.C. § 405(g), a claimant must show that the additional evidence is new and material and that the claimant had good cause for failing to submit the evidence to the administrative law judge during the prior proceeding. *Melkonyan v. Sullivan*, 501 U.S. 89, 100-01 (1991); *Sample v. Shalala*, 999 F.2d 1138, 1144 (7th Cir. 1993). New evidence is evidence that was "'not in existence or available to the claimant at the time of the administrative proceeding.'" *Sample*, 999 F.2d at 1144 (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)). New evidence is material "if there is a 'reasonable possibility' that it would change the outcome" of the final decision. *Nelson v. Bowen*, 855 F.2d 503, 506 (7th Cir. 1988). At a minimum, a showing of good cause includes some explanation as to why the new and material evidence was not gathered at the proper time. *Watts v. Harris*, 614 F.2d 515, 516 (1980).

The additional evidence proffered by Menolascina consists of the following: a March 31, 2000 letter authored by Dr. Lorenz indicating that "Menolascina will always have some back pain"; a May 4, 1999 note authored by Dr. Lorenz stating that Menolascina "may return to work" with certain limitations on lifting, standing, and sitting; an April 21, 1999 functional assessment completed by Gregory Steil indicating Menolascina's tolerance for work; and a May 4, 1999 Residual Physical Functional Capacity Assessment completed by some physician. (R. at 234-54.) None of this evidence is new. Menolascina's additional evidence is dated prior to the date of the ALJ hearing or is based on information that existed prior to the date of the ALJ hearing, and, in light of Menolascina's offering of only the unsubstantiated statement that "these additional records were not available to the ALJ for her review prior to her decision," we hold that Menolascina has failed to demonstrate that the additional evidence was unavailable to him prior to the ALJ hearing. *See Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997); *Sample*, 999 F.2d at 1144; *Waite v. Bowen*, 819 F.2d 1356, 1361-62 (7th Cir. 1987). Menolascina's unsubstantiated statement relating to the unavailability of the additional records is similarly deficient to demonstrate good cause. *See Waite*, 819 F.2d at 1361-62.

### V.   Conclusion

For the reasons stated, this Court denies Menolascina's Motion for Summary Judgment and Menolascina's Motion for Remand. The Commissioner's final decision is affirmed.

ENTER ORDER:

MARTIN C. ASHMAN
United States Magistrate Judge

**Dated:** April 23, 2002.

- 19 -

Copies have been mailed to:

FRANK G. TUZZOLINO, Esq.                  JONATHAN C. HAILE
4849 North Milwaukee                      Assistant United States Attorney
Suite 201                                  219 South Dearborn Street
Chicago, IL  60630                     Suite 500
                                        Chicago, IL  60604


Attorney for Plaintiff                     Attorney for Defendant